UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JOSEPH FIGUEROA,**

      **Plaintiff,**

**v.**                             **Case No: 6:21-cv-1583-PGB-EJK**

**CON-AIR INDUSTRIES, LLC,**

      **Defendant.**

_____/

## ORDER

This cause comes before the Court on Defendant Con-Air Industries, LLC's Motion for Summary Judgment (Doc. 24 (the "**Motion**")) and the parties' respective responses and replies thereto (Docs. 26, 27). Upon consideration, the Motion is due to be granted.

## I. BACKGROUND[1]

This dispute stems from an employer's dismissal of an employee who also serves as a military reservist. Plaintiff Joseph Figueroa served in the United States Navy from October 10, 2007 to October 10, 2011. (Doc. 23, ¶ 2). After retiring from active duty and a seven-year hiatus, he re-enlisted in the Naval Reserves in 2018. (*Id.* ¶ 3).

---

[1] The following facts come from the parties' Joint Stipulation of Agreed Material Facts (Doc. 23) or are not reasonably in dispute unless otherwise noted by indicating the parties' contrary factual positions.

Defendant is a Florida company in Orlando that manufactures and distributes air filtration products. (*Id.* ¶ 4). Plaintiff began working for Defendant as a civilian Maintenance Technician, first as a temporary employee in July 2019 and later as a full-time employee starting in December 2019. (*Id.* ¶¶ 5–7). Plaintiff's Maintenance Technician responsibilities included servicing equipment, facilitating efficient production, and maintaining a safe workplace free from any hazards or other dangerous conditions. (*Id.* ¶ 8). During his employment, Plaintiff signed a receipt for at least the following Defendant workplace policies: the Cell Phone Policy; the Personal Protective Equipment ("**PPE**") Policy; the Lock-Out, Tag-Out Policy; and the Safety Policy. (*Id.* ¶ 9).

From January 5, 2020 to January 17, 2020, Plaintiff was on leave from his employment with Defendant to attend his annual training for the Navy Reserves in Williamsburg, Virginia. (*Id.* ¶ 12). Plaintiff did not use his vacation time for this leave, nor did any employee of Defendant request that he do so. (Doc. 25, p. 17 52:14–20).

Later that year, Plaintiff started to receive written warnings for violations of Defendant's policies. On February 21, 2020, Plaintiff received a formal Final Written Warning from his supervisor, Morgan Roark, for allegedly violating Defendant's Lock-Out, Tag-Out Policy. (Doc. 23, ¶ 13). On September 16, 2020, Plaintiff received another formal Final Written Warning from another supervisor, Chris Jones, for allegedly impermissibly operating an industrial saw without wearing safety glasses. (*Id.* ¶ 14). On December 7, 2020, Plaintiff received a verbal

warning for allegedly failing to wear the required PPE from Norm Ogrin, the Production Supervisor for Defendant who was filling in that day for Chris Jones. (*Id.* ¶ 15). On December 29, 2020, Figueroa received a written warning from Chris Jones for allegedly violating Defendant's Safety Policy by dragging fifteen to twenty feet of water hose behind him, which allegedly left spilled water in a walkway area. (*Id.* ¶ 16). On March 19, 2021, Plaintiff received a Final Written Warning from Chris Jones for allegedly failing to address an underlying mechanical issue with a piece of Defendant's machinery. (*Id.* ¶ 19).

Previously in January 2021, Plaintiff had verbally requested use of military leave to attend the United Level Training that would occur between April 14 and May 1 of 2021. (*Id.* ¶ 17). In mid-March, Plaintiff had reminded Chris Jones of his upcoming military leave. (*Id.* ¶ 18).

On March 23, 2021, Plaintiff allegedly violated Defendant's Safety Rules, which led to Defendant's decision to terminate his employment. (*Id.* ¶ 20). Defendant officially terminated Plaintiff on March 30, 2021. (*Id.* ¶ 21).

Defendant also issued a written warning to another Maintenance Technician, Isaac Machado, on March 31, 2021 for a safety violation. (*Id.* ¶ 22). Defendant then terminated Isaac Machado's employment five days later for another safety violation. (*Id.*). Isaac Machado had no known ties to the military. (Doc. 25, pp. 156–57). In addition, Defendant's Maintenance Technician Kevin Wynn was dismissed on November 6, 2020 after a violation of company policies

on November 3 or November 4. (*Id.* at p. 154). Kevin Wynn likewise had no known ties to the military. (*Id.*).

Plaintiff brought this single-count employment discrimination case on September 27, 2021, alleging a violation of the Uniformed Services Employment and Reemployment Rights Act ("**USERRA**"). (Doc. 1). Defendant now moves for summary judgment (Doc. 24), and this matter is ripe for review after Plaintiff's response (Doc. 26) and Defendant's reply (Doc. 27).

## II.   STANDARD OF REVIEW

To prevail on a summary judgment motion, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).

The Court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." *Davila v. Gladden*, 777 F.3d 1198, 1203 (11th Cir. 2015) (quoting *Carter v. City of Melbourne*, 731 F.3d 1161, 1166 (11th Cir. 2013) (per curiam)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could

reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   DISCUSSION

For the following reasons, Plaintiff succeeds in raising a genuine dispute of material fact that his military service was at least a motivating factor for his dismissal, but Defendant also successfully carries its burden to show there is no genuine dispute it had a valid, dual motive for its termination decision, notwithstanding Plaintiff's status as a naval reservist.  Accordingly, Plaintiff's USERRA claim fails.

### A.   USERRA

USERRA protects members of the military from discrimination and retaliation in employment on the basis of their past, present, or prospective military service.  38 U.S.C. § 4311.  Discrimination under USERRA is defined broadly to include the denial of "employment, reemployment, retention in employment, promotion, or any benefit of employment" because of military service.  *Id.* § 4311(a).  Like other anti-discrimination statutes, USERRA is to be construed liberally to achieve its purpose of protecting those who serve in our armed forces from inequitable employment practices.  *Coffman v. Chugach*

*Support Servs., Inc.*, 411 F.3d 1231, 1238–39 (11th Cir. 2005).

In order to prove discrimination under USERRA, the employee bears the initial burden of establishing a prima facie case by showing by a preponderance of the evidence that their military status was a "motivating factor" in the employer's adverse employment decision.  *Id.*  To be a motivating factor, the employee's military status need not be the sole factor for the employer's decision, but only one factor which the employer would truthfully identify "if asked for the reasons for its decision."  *Id.* (internal quotation marks omitted).  Stated differently, the employee's military status is a motivating factor if the employer "relied on, took into account, considered, or conditioned its decision on that consideration."  *Id.* (internal quotation marks omitted).  Because "discrimination is seldom open or notorious," circumstantial evidence is often critical to the "motivating factor" inquiry, requiring an analysis of considerations such as:

> [P]roximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Id.* (quoting *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001)). "In the summary judgment context, the employee must establish a genuine issue of material fact as to whether his military status was a motivating factor in the adverse employment action to survive summary judgment." *Lewis v. Rite of*

*Passage, Inc.*, 217 F. App'x 785, 786–87 (10th Cir. 2007) (citing *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 313 (4th Cir. 2001)).

If the employee establishes a prima facie case of discrimination, the burden then shifts to the employer to prove by a preponderance of the evidence that valid reasons standing alone would have caused it to take the relevant course of action. *Coffman*, 411 F.3d at 1238–39. Importantly, the employer may demonstrate a valid reason for its decision in "dual motive" cases where the employer can prove it would have reached the same employment decision notwithstanding its improper consideration of the employee's reservist status.  *See Sheehan*, 240 F.3d at 1014; *see also Coffman*, 411 F.3d at 1239. If the employer succeeds in meeting this burden as an affirmative defense, the employee will be barred from recovering under USERRA.  *See Lewis*, 217 F. App'x at 786–87. In the summary judgment context, the employer must establish not only that it had a valid reason for taking the adverse employment action, but that there is no genuine issue of material fact that it would have taken the adverse employment action regardless of the employee's military status. *See id.* at 787 (citing *Leisek v. Brightwood Corp.*, 278 F.3d 895, 900 (9th Cir. 2002)).

### B.    Prima Facie Case: Motivating Factor

While not every circumstantial consideration weighs in his favor, at this procedural posture Plaintiff demonstrates that there is at least a genuine dispute of material fact regarding whether his status as a military reservist was a motivating factor for Defendant's decision to terminate his employment.

1.   *Proximity in time between the employee's military activity and the adverse employment action*

The nearness in time between Plaintiff's termination and his reminder to Defendant of his impending military training, for which he would require extended time off, raises at least the possibility that Plaintiff's military status was at least a motivating factor for his dismissal. Plaintiff reminded Defendant through supervisor Chris Jones in mid-March that he would soon be taking leave to attend his annual military training in mid-April. (Doc. 23, ¶ 18). Soon after on March 23, 2021, Plaintiff was cited for allegedly violating Defendant's Safety Rules, which led to Defendant's decision to terminate his employment. (*Id.* ¶ 20). Defendant officially terminated Plaintiff seven days later. (*Id.* ¶ 21). The Court agrees with Defendant that, if this were the only circumstantial factor weighing in Plaintiff's favor, such a possibility would not, by itself, be enough to raise a genuine issue of material fact, particularly given that Defendant had previously honored Plaintiff's previous military training commitments without mishap. (Doc. 24, p. 22). Plaintiff points to other circumstantial factors, however, that in sum total amount to raising a genuine factual dispute regarding Defendant's motivations.

2.   *Inconsistencies between the proffered reason and other actions of the employer*

Defendant argues there are no inconsistencies between its reason for firing Plaintiff: in its view, Plaintiff had a documented, consistent history of policy violations, so after Plaintiff continued to violate Defendant's workplace policies, it

terminated him. (Doc. 24, pp. 17–18). The Court agrees the undisputed evidence contains a documented history of write-ups and reprimands and that Plaintiff's pattern violating company policies aligns with Defendant's stated reason for dismissing Plaintiff. (Doc. 23, ¶¶ 13–16, 19–21). However, a jury might reasonably see an inconsistency between Defendant's decision to fire Plaintiff after this particular warning and the undisputed fact that Plaintiff had received at least two "final" warnings on prior occasions. (*Id.* ¶¶ 13–14). Put another way, it would not be unreasonable for a jury to wonder why Plaintiff was not dismissed for his first company violation following a previous "final" warning. In combination with Plaintiff's dismissal coming soon before his scheduled military leave, a jury might reasonably infer that Plaintiff's military status was at least part of Defendant's calculus to end Plaintiff's employment.

### 3.   *Employer's expressed hostility towards military service*

There is nothing in the record that demonstrates Defendant or its agents evinced an overt hostility to Plaintiff's military service. Nevertheless, two events may reasonably be interpreted to demonstrate such a hostility as Defendant admittedly was fully knowledgeable of Plaintiff's veteran and reservist status at time of hire. (Doc. 25, pp. 46–52). First, Chris Jones, Plaintiff's supervisor at the time, asked Plaintiff if he would be using vacation time while at his mandatory annual military training. (*Id.* at p. 16 47:3–47:16). While potentially innocuous, this inquiry cuts against Defendant's stated policies and prior practice as Plaintiff had not used vacation time in the past for his annual military training. (*Id.* at pp.

17 52:5–25, 145). Although the matter was dropped after Plaintiff stated he did not plan to use his vacation time, a jury might interpret Chris Jones' request as a manifestation of hostility towards Plaintiff's military service attributable to Defendant. (*Id.* at p. 17, 52:17–25). Second, Chris Jones required Plaintiff to work a night shift immediately before a required weekend military exercise despite his requests to the contrary. (*Id.* at p. 23 76:4–21). While Plaintiff was allowed to leave early before the night shift's completion to drive to this training, a jury might reasonably see a degree of hostility towards military service based on Defendant scheduling a reservist to work an overnight shift without time to rest and recover before his next-day military duties. (*See id.*).

> 4.   *Disparate treatment of military-related employees compared to other employees with similar work records or offenses.*

While the evidence of disparate treatment is thin, Plaintiff testifies with some specificity regarding other Maintenance Technicians employed by Defendant who behaved similarly at least in some respects yet were not written up or given formal warnings for company policy violations. (*Id.* at pp. 36–37 126:2–133:19). Importantly, Plaintiff did not testify that Defendant knew about these violations, but a jury might reasonably infer Defendant's knowledge of them based on the frequency and openness with which Plaintiff testifies they occurred. (*See id.*).  The inference of disparate treatment is weakened, though, as Defendant demonstrates it dismissed two other Maintenance Technicians with no known ties to the military for violations of company policy. (*Id.* at pp. 154, 156–57).

Thus, while the collective circumstantial considerations are not entirely in his favor, Plaintiff has put forward enough record evidence in sum total for a jury to reasonably conclude Plaintiff's status as a military reservist was at least a "motivating factor" behind Defendant's employment decision. The burden thus shifts to Defendant to show that there is no genuine dispute of material fact concerning whether it would have terminated Plaintiff notwithstanding its potentially improper consideration of his reservist status.

## C.    Dual Motive

Ultimately, the Court finds the documented and undisputed record of repeated warnings which Plaintiff received for violations of workplace policies leading up to his final policy violation demonstrates there is no genuine dispute that Defendant had a valid reason for terminating Plaintiff.

Plaintiff's first attempt to raise a genuine issue of material fact misconstrues the law. Plaintiff points out that while he received write-ups on several previous occasions, none of these write-ups led to his termination until he provided paperwork for his military leave. (Doc. 26, p. 11). The Court notes, however, that Plaintiff previously had taken leave for his annual military training in early 2020 without incident, so the link between providing the military leave paperwork and the termination decision is tenuous at best. (Doc. 25, pp. 16–17 47:3–52:25). Plaintiff's rejoinder appears to be that Chris Jones—Defendant's employee and Plaintiff's supervisor—was the offending party for which Defendant is liable, and Chris Jones did not become Plaintiff's supervisor until after Plaintiff's annual

military training leave in 2020. (Doc. 25, p. 16 48:3–49:10; Doc. 26, p. 12). More importantly, though, the Court cannot punish Defendant just because it *could* have validly terminated Plaintiff on previous occasions following Defendant's initial warnings but chose not to do so. "Dual motive" cases provide for precisely such instances where, as here, an employer might have improperly considered an employee's protected status yet also may have had another valid motive—i.e., the dual motive—in making the relevant employment-related decision. *See Coffman*, 411 F.3d at 1238–39. As such, Plaintiff's first argument amounts to nothing more than rehashing the "proximity in time" consideration in the "motivating factor" analysis, but this does not create a genuine factual dispute about whether the written warnings were a *separate* valid reason for dismissing Plaintiff.[2]

In contrast, Plaintiff's second argument could call into question the factual veracity of Defendant's dual motive. Specifically, Plaintiff contends that several other similarly situated employees displayed the same behavior as Plaintiff yet retained their employment, so Defendant cannot use Plaintiff's policy violations as a valid basis for Plaintiff's termination because the violations were not terminable offenses for other employees. (Doc. 26, pp. 12–13). In Plaintiff's telling, Defendant's workplace environment was replete with consistent company policy

---

[2]   Plaintiff's related argument—that Defendant through the actions of Chris Jones displayed animus towards Plaintiff's military status—fails for the same reason: it simply recycles the "motivating factor" factual analysis without demonstrating how those same facts call into question the separate validity of Defendant's stated "dual motive" for dismissing Plaintiff. (Doc. 26, p. 12).

violations which went without company reprisals. (*See* Doc. 25, pp. 36–37 126:2–133:19). If this version of events were borne out by the factual record, the Court agrees it would create a triable issue of fact as to whether Defendant had a dual motivation for dismissing Plaintiff beyond his military service: if believed, it would call into question whether similar violations of company policy actually led, in practice, to employee dismissals.[3] In other words, Defendant's alleged inaction in the face of similar violations by similarly situated Maintenance Technicians might lead a jury to reasonably conclude that Defendant would not have reached the same termination decision without consideration of Plaintiff's military reservist status. *Sheehan*, 240 F.3d at 1014. The record, however, does not reasonably support this selective retelling.

To start, Plaintiff was cited numerous times by at least two supervisors other than Chris Jones; thus, the record is clear at least some of Defendant's policies were enforced in a consistent way. (Doc. 23, ¶¶ 13, 15). More importantly, Defendant points out that it also terminated its Maintenance Technicians Isaac Machado and Kevin Wynn, who had no known ties to the military, after documented violations of Defendant's policies. (Doc. 25, pp. 154, 156–57). Plaintiff attempts to explain these dismissals away by arguing they only occurred after

---

[3]   Again, Defendant argues there is no evidence its managers knew about these other alleged employee policy violations, (Doc. 27, pp. 8–9), but Plaintiff testifies to violations that are sufficiently wide-spread that the Court agrees there is at least a genuine issue of fact that Defendant was on notice about these violations. (Doc. 125, pp. 36–37 126:2–133:19). Moreover, the Court would have to make impermissible credibility determinations were it to discount Plaintiff's testimony.

behavior far worse, in his estimation, than Plaintiff's cited behavior. (Doc. 26, pp. 6, 10–11). This is irrelevant, though, because it undercuts Plaintiff's effective argument that Defendant's policies were a sham, selectively enforced in a discriminatory fashion such that its use of them is an invalid reason for dismissing its employees. (*Id.* at pp. 12–13). In addition, to accept this argument—that the Court should weigh the relative grievousness of various employees' company policy violations to determine which ones warrant termination and which ones do not—would cut against the Eleventh Circuit's admonition that "federal courts do not sit as a super-personnel department" and that a "plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). Consequently, the Court finds no reasonable jury could conclude anything other than Plaintiff's undisputed disciplinary record paired with his undisputed March 2020 violation of company policy gave Defendant a separate valid reason for terminating him, even if the Court assumes Defendant also included his military status as a motivating factor in the calculus.

## IV. CONCLUSION

For the aforementioned reasons, it is **ORDERED** and **ADJUDGED** as follows:

1.    The Motion (Doc. 24) is **GRANTED**;

2.    The Complaint (Doc. 1) is **DISMISSED WITH PREJUDICE**;

3.    The Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida on December 2, 2022.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties